IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARCUS DAVIS,

        **Plaintiff,**

        v.                                CASE NO.  23-3003-JWL

WYANDOTTE COUNTY DETENTION
CENTER, et al.,

        **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  Plaintiff filed his case in the United States District Court for the Eastern District of Missouri, and the case was transferred to this Court.  The Court granted Plaintiff leave to proceed in forma pauperis.  Although Plaintiff is currently housed at the Fulton Reception and Diagnostic Center in Fulton, Missouri, his claims arose during his detention at the Wyandotte County Detention Center in Kansas City, Kansas ("WCDC").

The Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  Plaintiff has filed an Amended Complaint (Doc. 8).  The Court's screening standards are set forth in the MOSC.

## I.  Nature of the Matter before the Court

Plaintiff's claims relate to his injured finger.  He alleges that after making the medical staff at the WCDC aware of his injury and the level of pain he was experiencing, and "talking to multiple nurses and the doctor," he "still was not given adequate medical care."  (Doc. 8, at 2.)

Plaintiff claims that his finger was visibly deformed, but medical staff only gave him medication. *Id*. Plaintiff alleges that Nurse Parker gave him medication for the swelling and pain. *Id*. at 3.

Plaintiff alleges that he asked about an x-ray when he spoke with several nurses and Dr. Alicia, but he did not receive one. *Id*. at 2. Plaintiff alleges that he complained about his hand for two months. *Id*. Plaintiff alleges that when he was transferred to Fulton, the doctor immediately ordered an x-ray and found out his finger had been broken for over three months. *Id*. Plaintiff alleges that his finger is still visibly dislocated and broken and now he is unable to completely close his finger. *Id*. at 2. Plaintiff alleges that he has permanent damage to his finger due to the neglect and inadequate medical care he received at the WCDC. *Id*. at 5. Plaintiff also alleges that taking ibuprofen twice a day for five months caused him to have stomach problems and he was prescribed indigestion medication. *Id*.

Plaintiff names as defendants: Wyandotte County Detention Center Medical Staff; and Daniel Soptic, Wyandotte County Sheriff. Plaintiff seeks compensatory damages. *Id*. at 6.

## II. DISCUSSION

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to

provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole

3

obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the WCDC. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of the WCDC to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

> (1)     The WCDC officials shall submit the *Martinez* Report by **April 28, 2023**. Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint. If the Amended Complaint survives screening, the Court will enter a separate order for service.

> (2)     Officials responsible for the operation of the WCDC are directed to undertake a review of the subject matter of the Amended Complaint:

> a.     To ascertain the facts and circumstances;

> b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(3)    Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the WCDC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The WCDC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)    Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)    Authorization is granted to the officials of the WCDC to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)    No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)    Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Wyandotte County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez*

Report ordered herein.  Upon the filing of that report, the Wyandotte County Sheriff may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to the Wyandotte County Sheriff, and to the Wyandotte County District Attorney.

**IT IS SO ORDERED.**

**Dated March 23, 2023, in Kansas City, Kansas.**

<u>**S/   John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**