IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARCUS DAVIS,

    **Plaintiff,**

    v.                                                        CASE NO. 23-3003-JWL

WYANDOTTE COUNTY DETENTION
CENTER, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se case under 42 U.S.C. § 1983. Plaintiff filed his case in the United States District Court for the Eastern District of Missouri, and the case was transferred to this Court. The Court granted Plaintiff leave to proceed in forma pauperis. Although Plaintiff is currently housed at the Boonville Correctional Center in Boonville, Missouri, his claims arose during his detention at the Wyandotte County Detention Center in Kansas City, Kansas ("WCDC").

The Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed an Amended Complaint (Doc. 8). On March 23, 2023, the Court screened Plaintiff's Amended Complaint and found that the proper processing of Plaintiff's medical claim could not be achieved without additional information from appropriate officials of the WCDC. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The Court ordered the WCDC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28

U.S.C. § 1915A." (Doc. 9, at 4.) The *Martinez* Report (Doc. 12) (the "Report") has now been filed and Plaintiff's Amended Complaint is before the Court for screening in light of the Report. The Court's screening standards are set forth in the MOSC.

## I. Nature of the Matter before the Court

The underlying facts are set forth in detail in the Court's MOSC and the Court's Memorandum and Order at Doc. 9. In summary, Plaintiff claims he received inadequate medical care after he injured his finger playing basketball at the WCDC. Plaintiff claims he did not receive an x-ray until he was transferred to a different facility.

The Report provides that "[a] third-party contractor, Wellpath, provides medical care and treatment to offenders incarcerated at the Wyandotte County Detention Center." (Doc. 12, at 1.) The Report relies on the Affidavit of Dee-Dee Gregory, the Health Services Administrator at the WCDC, who reviewed Plaintiff's medical records. (Doc. 12–1.) Gregory's Affidavit provides in relevant part that:

> Mr. Davis underwent a receiving screening by medical staff at WCDC on July 17, 2022. *See* Exhibit 8, pgs. 1–11.
> On August 17, 2022, Mr. Davis submitted a Health Services Request form indicating that his fingers were hurting, swollen, and difficult to move. *See* Exhibit B, pg. 12.
> On August 18, 2022, Mr. Davis was examined in the medical unit. Mr. Davis expressed that he injured his hand by hitting it on his cell door. The nurse noted that the injury did not interfere with his activities of daily living, he had a normal range of motion, and the pain was relieved when his hand was elevated. The nurse further noted mild swelling in his 3rd, 4th, and 5th fingers. Mr. Davis was prescribed 400 mg of ibuprofen twice per day for five days. He was instructed to keep his hand elevated and to return to the clinic if the injury was unresolved within three days. *See* Exhibit B, pgs. 13–18.
> There is no indication in the record that Mr. Davis returned or attempted to return to the medical unit within three days.
> On August 28, 2022, Mr. Davis was seen in medical for an unrelated complaint. There is no mention of any complaints

regarding an injured finger or injured fingers. *See* Exhibit B, pgs. 20.

On September 14, 2022, Mr. Davis submitted a Health Services Request form stating that his hand was swollen, he was experiencing pain, and he was unable to make a fist. *See* Exhibit B, pgs. 21.

On September 19, 2022, Mr. Davis was examined in the medical unit. Mr. Davis complained of pain in his right hand. The nurse noted mild swelling of the 4th metacarpal with a normal range of motion and a normal response when palpated. Mr. Davis was prescribed 400 mg of ibuprofen twice per day for five days. He was instructed to keep his hand elevated and to return to the clinic if the injury was unresolved within three days. *See* Exhibit B, pgs. 22–27.

There is no indication in the record that Mr. Davis returned or attempted to return to the medical unit within the three days.

On September 24, 2022, Mr. Davis submitted a medical request stating that his finger was still swollen, he was not able to make a fist, and "the pill" was not working. *See* Exhibit B, pg. 28.

On September 27, 2022, Mr. Davis was examined in the medical unit. It was noted that there was minimal swelling of Plaintiff's finger. Mr. Davis indicated he experienced aching pain with movement but relief at rest. Mr. Davis was able to make a fist. The notes appear to indicate an improvement in Mr. Davis's condition from previous examinations. Mr. Davis was prescribed 400 mg of ibuprofen twice per day for five days. He was instructed to keep his hand elevated and to return to the clinic if the injury was unresolved within three days. *See* Exhibit B, pgs. 29–35.

There is no indication in the record that Mr. Davis returned or attempted to return to the medical unit within three days.

On October 19, 2022, Mr. Davis submitted a Health Services Request form stating that his finger was swollen for two months, and he was starting to experience numbness in the tip of the finger. *See* Exhibit B, pgs. 36.

On October 20, 2022, Mr. Davis was examined in the medical unit. Mr. Davis reported experiencing dull pain and tingling in his finger. Symptoms did not interfere with his activities of daily living. Ibuprofen was previously tried, and it worked. Some swelling was noted to the 4th digit. Though there were some signs of pain or discomfort, his range of motion of his finger was normal. *See* Exhibit B, pgs. 37–41.

Also on October 20, 2022, a nurse practitioner ordered x-rays of Mr. Davis's right hand. Mr. Davis was prescribed 400 mg of ibuprofen twice per day for five days. He was instructed to keep his hand elevated and splinted, and to return to the clinic if the

> injury was unresolved within one week. *See* Exhibit B, pgs. 42–44.
>
> Mr. Davis was transferred out of WCDC on or around October 20, 2022. Due to the transfer, it does not appear medical staff were able to perform the x-ray prior to his leaving WCDC.

(Doc. 12–1, at 1–4) (internal paragraph symbols omitted); *see also* Doc. 12–2 (Exhibit B consisting of Plaintiff's redacted medical records).

## II. DISCUSSION

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"

*Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).  An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).  "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139.  "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted).  Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*.  "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*.  (citations omitted).

The Court finds that Plaintiff's medical records do not show that he received the functional equivalent of a complete denial of care. Plaintiff received medical visits shortly after he requested them, received pain medication, and was notified that he should return within days if his issue was not resolved. Plaintiff's range of motion was monitored throughout the visits. An x-ray was eventually ordered, but Plaintiff was unable to receive it due to his transfer. Although there may have been a delay in ordering the x-ray, this suggests, at most, mere negligence.

## III.  Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **May 26, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS SO ORDERED.**

**Dated April 28, 2023, in Kansas City, Kansas.**

<u>S/   John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE